**Gerald BARKER, Plaintiff–Appellant,**

v.

**Donna E. SHALALA, Secretary, Department of Health and Human Services, Defendant–Appellee.**

No. 93–6122.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 8, 1994.

Decided Aug. 26, 1994 *.

* This decision was originally issued as an "unpublished decision" filed on August 26, 1994. On November 4, 1994, the court designated the opinion as one recommended for full-text publication.

disability benefits and supplemental security income. Asserting that the ruling was not supported by substantial evidence, the plaintiff contends that an administrative law judge misconstrued evidence of a mental disability and admitted vocational evidence improperly. We do not find the plaintiff's contentions persuasive, and we shall affirm the judgment of the district court.

I

The plaintiff, Gerald Barker, who is now 31 years old, hurt his back at work on February 11, 1986. Over the next year and a half he sought treatment from various doctors. These physicians uniformly found that Mr. Barker's injury was not severe and was treatable. They prescribed medications and exercise, but Mr. Barker continued to complain of persistent pain.

On July 8, 1987, Mr. Barker filed a claim for disability insurance benefits and supplemental security income, alleging that the injury to his lower back had left him completely and totally disabled. His claim was denied at the initial and reconsideration levels, and he requested a hearing before an administrative law judge.

The ALJ arranged to have Mr. Barker referred to Carol F. Ruff, Ph.D., a clinical psychologist, for a psychological evaluation. Dr. Ruff made a diagnosis of "clinical somatoform pain disorder," a condition in which one perceives pain that lacks a physiological basis. She also found that Mr. Barker possessed borderline intellectual capacity, and that he suffered from an undefined "personality disorder." She noted, on the other hand, that the plaintiff had an intact memory with no major deficits in intellectual capacity, and that his behavior was basically appropriate.

Mr. Barker told Dr. Ruff that he had graduated from high school and was able to read and write; that he was able to get along adequately with his then-wife; and that the only medication he took for his back pain was Doan's pills and Tylenol. Mr. Barker reported that he experienced occasional depression. He denied having any crying spells, claimed that his appetite was good, and noted that he

Robert E. Francis (argued and briefed), Francis Law Office, Cadiz, KY, for plaintiff–appellant.

W. Brady Miller, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Louisville, KY, Susan Kelm Story (briefed), Dept. of Health and Human Services, Office of Gen. Counsel; Mack A. Davis, Dept. of Health & Human Services; Bruce Granger, Mary Ann Sloan, and Holly A. Grimes, Dept. of Health and Human Services, Office of Gen. Counsel, Atlanta, GA, for defendant–appellee.

Before: MARTIN, NELSON, and DAUGHTREY, Circuit Judges.

PER CURIAM.

This is an appeal from a district court decision affirming a denial of social security

typically slept well as long as he remained on his back. He told Dr. Ruff that his daily activities consisted of lying around the house or sitting down and watching television, but that he tried to get out every day for one or two hours to visit his mother or other relatives. He said that his wife did all the chores around the house, but that he was able to take out the trash approximately twice a week. He also accompanied his wife to the grocery store.

Dr. Ruff expressed the opinion that Mr. Barker was a demanding and dependent individual who was constantly frustrated when his perceived needs were not met. She stated that he might develop somatic symptoms in reaction to his stress or frustration. She found that the plaintiff was able to understand, retain, and follow most instructions, and that he had a good ability to follow work rules and to maintain his personal appearance. She rated as only fair his ability to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to deal with work stresses, to function independently, to maintain attention and concentration, to behave in an emotionally stable manner, to relate predictably in social situations, and to demonstrate reliability.

The ALJ referred Mr. Barker to Charles A. Barlow, M.D., who had treated the plaintiff in 1986. Dr. Barlow found Mr. Barker to be "completely normal," with no objective evidence indicating an inability to engage in work, up to and including strenuous heavy lifting.

At an administrative hearing held on October 2, 1989, Mr. Barker testified that he continued to watch television, drive his car on a daily basis, and run errands for his mother. He stated that he was not receiving any medical treatment, and that he took only non-prescription medications for his pain. He described himself as being depressed when he had headaches.

William Weiss, Ph.D., a clinical psychologist, testified at this hearing as a medical advisor. Dr. Weiss had reviewed Dr. Ruff's report, as well as the other medical reports.

He had also listened to Mr. Barker's testimony at the hearing. Dr. Weiss opined that the plaintiff's depression was only situational, not constant, and that any depression he did experience was only mild. Dr. Weiss agreed with Dr. Ruff that the plaintiff had a somatoform disorder resulting in heightened sensations of pain, but he indicated that this disorder resulted in only a slight restriction of daily activities and slight difficulty in maintaining social functioning. Dr. Weiss noted that Mr. Barker did not appear to experience deficiencies of concentration very often, and that he never had experienced episodes of deterioration at work or in a work-like setting. Dr. Weiss questioned Dr. Ruff's vague diagnosis of a personality disorder, noting that Mr. Barker did not demonstrate behavior consistent with a serious personality disorder. Dr. Ruff's diagnosis, Dr. Weiss said, was refuted by the absence of a history of alcoholism or substance abuse, persistent disturbances of mood, oddities of thought, pathological suspicion, or seclusive behavior. Dr. Weiss stated that Mr. Barker's concentration was not constantly impaired by pain, because he testified to experiencing pain only intermittently. Concluding that Barker's mental impairments were mild, Dr. Weiss emphasized once again the absence of any evidence that the plaintiff had experienced episodes of deterioration at work.

On November 29, 1989, the ALJ issued a decision finding that the plaintiff was not disabled and that he could perform his past relevant work as a tobacco warehouse laborer and construction laborer. The Appeals Council vacated this decision and remanded the case to the ALJ, ordering a reevaluation of the plaintiff's complaints of pain in accordance with Social Security Ruling 88–13.[1] The ALJ held a supplemental hearing on February 20, 1991, at which time Mr. Barker and a vocational expert testified.

The vocational expert stated that the claimant's past work was medium to heavy unskilled work, with the exception of his work as a truck driver, which was semiskilled. Mr. Barker possessed no transfer-

---

1. Social Security Ruling 88–13 provides, in relevant part, that "[w]hen medical signs and laboratory findings do not substantiate any physical

impairment capable of producing the alleged pain ... the possibility of a mental impairment as the basis for the pain should be investigated."

able skills, the expert said, except for skills relevant to some light truck driving jobs. Barker testified that he was unable to lift more than 30 to 35 pounds; assuming this to be true, the expert said, he was precluded from performing his past relevant work.

The ALJ propounded a hypothetical question to the vocational expert in which he asked the expert to assume that Mr. Barker had "all the limitations, restrictions and pains to which he testified." The ALJ asked the expert to assume that Mr. Barker's lower back pains "do not last very long, but they are very severe when they do occur." The vocational expert was thus to assume that although Mr. Barker could walk on a daily basis, he did not like to move suddenly or stoop or bend. The expert was also to assume that Mr. Barker occasionally suffered from headaches, blurred vision, and numbness in his feet and hands. The ALJ further told the vocational expert to assume that Mr. Barker should avoid crowds and that he "has trouble with close relationships, and getting along with others." "He may have a volatile temper," the ALJ said, "so he should not be in places where he is ... dealing on a regular basis with other people." The question further asked the witness to assume that Mr. Barker could lift and carry up to 30 or 35 pounds as long as he did not have to stoop down and pick the weights up. The vocational expert was to assume that Mr. Barker had problems concentrating but that his memory was intact. The ALJ asked whether a person with these limitations and of plaintiff's age, education, and work history was capable of performing jobs existing in significant numbers in the national economy.

Before the vocational expert answered this hypothetical question, the ALJ asked the claimant's attorney whether the question accurately stated the limitations from which Mr. Barker claimed to suffer. Mr. Barker's attorney responded in the affirmative. The vocational expert then responded that the claimant could not perform his past work with these restrictions, but that he could perform significant numbers of jobs in the national economy, including jobs at the light exertional level such as some custodial work,

some night watchman jobs, and some truck driving and delivery jobs.

The vocational expert was then asked to consider further that this individual also had borderline intellectual capacity, could read with some concentration problems, suffered from a somatoform pain disorder, as well as "some sort of personality disorder," and generally had the restrictions set forth in Dr. Ruff's psychological assessment. The vocational expert testified that such limitations would not preclude an individual from performing the jobs previously enumerated. The expert explained that these jobs involved minimal contact with the public, involved only simple instructions, and did not require constant supervision. The vocational expert explained that his knowledge of job requirements and number of jobs was based on his personal observations of employment conditions in Kentucky, as well as on publications by the Bureau of the Census, state employment service bureaus, and the Department of Labor's *Dictionary of Occupational Titles.* The vocational expert stated that there were approximately 2,300 light custodial jobs and 5,000 custodial jobs in the lower medium range that the claimant could perform, as well as 1,200 sedentary and 7,500 light night watchman jobs, and approximately 5,000 light truck driving jobs.

In a decision issued on May 31, 1991, the ALJ found that Mr. Barker had a residual functional capacity to perform a reduced range of light work activities. Pursuant to the Appeals Council's remand order, the ALJ evaluated the claimant's subjective complaints of pain, and the possibility of a mental explanation for the claimant's preoccupation with pain, according to Social Security Ruling 88–13. Relying on the vocational expert's testimony, the ALJ concluded that the claimant could perform a significant number of jobs in the national economy, and that accordingly he was not disabled.

Mr. Barker appealed this decision to the district court, where it was affirmed. This timely appeal followed.

II

A

The plaintiff's first contention is that the ALJ failed properly to evaluate his sub-

jective complaints of pain under Social Security Ruling 88–13, as directed by the Appeals Council. The plaintiff did not raise this issue in the district court; accordingly, we shall not consider it here. *J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co.,* 936 F.2d 1474, 1488 (6th Cir.1991).

### B

■ The plaintiff contends that the ALJ's evaluation of his mental impairments is not supported by substantial evidence, and that a proper view of these impairments would show him to be totally and permanently disabled. This court's review of the ALJ's findings is limited to an inquiry into whether they were supported by substantial evidence. 42 U.S.C. § 405(g); *Cotton v. Sullivan,* 2 F.3d 692, 695 (6th Cir.1993). "If the answer to that question is 'Yes' [the court] may not even inquire whether the record could support a decision the other way." *Smith v. Secretary of Health and Human Servs.,* 893 F.2d 106, 108 (6th Cir.1989).

Mr. Barker argues that the ALJ improperly "ignored" or "rejected" Dr. Ruff's findings concerning his mental impairments, and fully accepted Dr. Weiss' evaluation of his mental condition as less serious. Dr. Ruff's findings are entitled to greater weight, claims the plaintiff, because Dr. Weiss was merely a medical advisor called to testify at the hearing and had not made a personal examination of Mr. Barker. Without a valid, explicitly stated rationale for rejecting the findings of Dr. Ruff, Barker asserts, the ALJ's conclusion that the plaintiff's mental limitations did not preclude him from gainful activity were not supported by substantial evidence.

■ We are not persuaded. The record shows that the findings of Dr. Ruff were neither ignored nor rejected by the administrative law judge. The ALJ specifically discussed Dr. Ruff's conclusions in his opinion. Recognizing that there were some discrepancies between the testimony of Drs. Ruff and Weiss, the ALJ noted that they were mainly differences of degree and not of kind. Drs. Ruff and Weiss agreed that Mr. Barker suffered from a somatoform disorder and that his intellectual capacity was at the borderline level. Dr. Weiss testified that he saw no

basis for Dr. Ruff's diagnosis of a "personality disorder," but the alleged personality disorder was nonetheless factored into the hypothetical question posed to the vocational expert.

The ALJ was entitled to accept Dr. Weiss' evaluation of the severity of the plaintiff's impairments in preference to Dr. Ruff's. Dr. Weiss had access to the entire medical record in the case, whereas it appears that Dr. Ruff worked only from her personal examination of Mr. Barker. Additionally, Dr. Weiss observed Mr. Barker at the 1991 administrative hearing, listened to his testimony, and based his conclusions in part on his first-hand observation of Mr. Barker.

■ Mr. Barker argues at some length that the "treating physician doctrine," under which the testimony of a treating physician is entitled to substantial deference, should apply to this case. We disagree. Dr. Ruff (who was not a physician, of course) was not hired to treat Mr. Barker. She was paid by the Social Security Administration to examine Mr. Barker on one occasion, and she administered no treatment to him. The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records. *Bowman v. Heckler,* 706 F.2d 564, 568 (5th Cir. 1983). Dr. Ruff examined Mr. Barker on only one occasion, and the rationale of the treating physician doctrine simply does not apply here. Dr. Ruff's report was entitled to no special degree of deference. *Atterberry v. Secretary of Health & Human Servs.,* 871 F.2d 567, 572 (6th Cir.1989). Furthermore, it is manifest from the ALJ's decision that he did not simply ignore or discard Dr. Ruff's findings. He discussed those findings in detail and, to a large extent, adopted them.

To the extent that Dr. Weiss' conclusions differed from Dr. Ruff's, Dr. Weiss explained his position by reference to the objective medical and psychological reports in Mr. Barker's file, as well as to undisputed facts

concerning his prior work and social history. Insofar as the ALJ credited Dr. Weiss' findings in concluding that Mr. Barker's mental limitations were not totally disabling, the ALJ had the support of substantial evidence.

### C

Crediting the testimony of the vocational expert, the ALJ found that the plaintiff could perform a substantial number of jobs in the national economy. The plaintiff contends that the jobs listed by the vocational expert are not pertinent here. All of the custodial and truck driving jobs in the *Dictionary of Occupational Titles* are listed at the medium exertional level, he says, and the jobs in question are semi-skilled rather than unskilled. The plaintiff comes close to arguing that only the *Dictionary of Occupational Titles* can be used as a basis for defining the characteristics of jobs occurring in the national economy.

The plaintiff's argument does not withstand scrutiny. See *Whitehouse v. Sullivan,* 949 F.2d 1005 (8th Cir.1991) (holding that a vocational expert need not correlate job titles in the *Dictionary* with titles taken from state job summaries).[2] The Social Security regulations themselves provide that the *Dictionary of Occupational Titles* is not the sole source of admissible information concerning jobs. Title 20 C.F.R. § 404.1566 provides that an administrative law judge may take administrative notice not only of the *Dictionary of Occupational Titles,* but also of various publications issued by the Bureau of the Census, the Social Security Administration, and state employment agencies. The vocational expert explicitly stated that his testimony regarding job characteristics and availability was based in part on the latter publications. Further, § 404.1566(e) specifically contemplates the use of vocational experts in determining complex issues concerning the characteristics of specific occupations. And Social Security Ruling 82–41, Part 2(c), states that the *Dictionary of Occupational Titles* can provide guidance only as to a "majority" of jobs in the national economy, and that a vocational expert should be consulted in cases where the characteristics of a job are not "obvious."

The *Dictionary of Occupational Titles* itself contains a disclaimer, moreover, noting that it provides only "composite descriptions of occupations as they may typically occur." The descriptions listed in the dictionary "may not coincide with a specific job as actually performed in a particular establishment or any given industry." The dictionary is based only on a selective sampling of 75,000 job sites out of the many millions of work places in the United States. Thus, the dictionary says, "[a]n occupation found to have certain characteristics in job situations observed by the employment service does not necessarily preclude the same occupation from having different characteristics in other job situations." It would be manifestly inappropriate to make the *Dictionary of Occupational Titles* the sole source of evidence concerning gainful employment.

Finally, it should be noted that the vocational expert in this case was available for, and was subjected to, vigorous cross-examination by the plaintiff. The fact that the specific jobs enumerated were not listed in the *Dictionary of Occupational Titles* was brought out and explored in detail in the administrative hearing. The credibility of the vocational expert's testimony was fully probed at the hearing, and credibility was properly within the province of the ALJ to determine. *Sias v. Secretary of Health & Human Servs.,* 861 F.2d 475, 480 (6th Cir. 1988). The ALJ's credibility findings are subject to substantial deference on review, *King v. Heckler,* 742 F.2d 968, 974 (6th Cir. 1984), and we cannot say the ALJ clearly erred by accepting what the expert said.

**AFFIRMED.**

---

**2.** There may be some tension between the Eighth Circuit's decision in *Whitehouse* and the decision of the Second Circuit in *Mimms v. Heckler,* 750 F.2d 180, 186 (2d Cir.1984). If there is any conflict, we think the *Whitehouse* decision is the sounder one.