**Mai Yee PHA, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security,[1] Defendant.**

No. 5:95CV553.

United States District Court,
N.D. Ohio,
Eastern Division.

Sept. 29, 1995.

As Corrected Nov. 28, 1995.

---

1. The functions of the Secretary of Health and Human Services in Social Security cases were transferred to the Commissioner of Social Security pursuant to P.L. No. 103–296, the Social Security Independence and Program Improvements Act of 1994, effective March 31, 1995. Pursuant to Fed.R.Civ.P. 25(d)(1), Shirley S. Chater, Commissioner of Social Security, is hereby substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action. Despite this substitution of parties in the caption, the Court refers to the Secretary in the text, as she was the appropriate party at the time of the underlying decision.

Robert V. Maher, Hudson, OH, for Mai Yee Pha.

Kent W. Penhallurick, Office Of The U.S. Attorney, Cleveland, OH, for Department of Health and Human Services, Secretary.

## MEMORANDUM AND OPINION

THOMAS, United States Magistrate Judge.

### I. Introduction.

Before the Court is the appeal by Mai Yee Pha ("Plaintiff") of the finding by the Secre-tary of Health and Human Services (the "Secretary") that Plaintiff is not entitled to Supplemental Security Income ("SSI") bene-fits. The present action arises out of a deci-sion by Administrative Law Judge Stanley Christopher (the "ALJ") that Plaintiff is not entitled to such benefits.

The ALJ found that Plaintiff had not reached the age of 65, and was, therefore, not entitled to SSI benefits. The sole issue presented in this action is whether the ALJ's finding with respect to Plaintiff's date of birth is supported by substantial evidence.

For the reasons set forth below, the deci-sion of the Secretary is affirmed.

### II. Background.

Plaintiff applied for SSI benefits on No-vember 4, 1992, claiming that she was born on December 5, 1927 and, therefore, eligible for benefits because she was 65 years of age (Tr. 58–70). Her application was denied ini-tially and upon reconsideration (Tr. 71–73, 77–78, 79–80). Plaintiff requested a hearing before an ALJ, and a hearing before an ALJ was conducted on October 15, 1993 (Tr. 82–83, 26–57). The ALJ rendered his decision on April 28, 1994 (Tr. 15–19). The ALJ found that the "most probative evidence of record, especially the claimant's own recita-tion of the chronology of events, supports a determination that October 8, 1939 is the date of birth for the claimant" (Finding No. 2, Tr. 18). Accordingly, the ALJ found that Plaintiff was not entitled to benefits because she had not reached the age of sixty-five (Finding No. 3, Tr. 18, 19).

Plaintiff sought a review of the ALJ's deci-sion (Tr. 9–11), and on December 6, 1994, the Appeals Council denied her request (Tr. 7–8). Plaintiff filed her action in this Court on March 9, 1995 seeking judicial review of the Secretary's decision denying Plaintiff's appli-cation. On May 30, 1995, Plaintiff filed a "Motion and Affidavit of Claimant" (hereinaf-ter "Remand Motion") (Docket # 13) seeking a remand of the case to the Secretary for the consideration of "new evidence." The "new evidence" is an affidavit of Plaintiff signed May 24, 1995 (hereinafter "May 24, 1995 Affidavit"). Plaintiff filed a "Brief of Plain-

tiff" (Docket # 16) on June 16, 1995 which incorporates, in large part, the argument set forth in the Remand Motion. The Defendant's Brief (Docket # 17) is responsive to Plaintiff's Remand Motion and Brief.

The parties have consented to the jurisdiction of the undersigned for the entry of judgment in this case, pursuant to 28 U.S.C. § 636(c)(1) (Docket # 15). The parties have waived the right to appeal the undersigned's decision to a United States District Judge, and have agreed that any appeal shall be to the Court of Appeals for the Sixth Circuit. 28 U.S.C. § 636(c)(3).

### III. Discussion.

 Pursuant to 42 U.S.C. § 405(g), the Court's review of the ALJ's findings is limited to an inquiry into whether they were supported by substantial evidence. *Barker v. Shalala,* 40 F.3d 789, 794 (6th Cir.1994). " 'If the answer to that question is 'Yes' [the court] may not even inquire into whether the record could support a decision the other way.' " *Id.* (quoting *Smith v. Secretary of Health & Human Servs.,* 893 F.2d 106, 108 (6th Cir.1989)). It is well settled that "substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Stanley v. Secretary of Health & Human Servs.,* 39 F.3d 115, 117 (6th Cir.1994).

In this case, for Plaintiff to be eligible for SSI benefits, she had to establish that she was sixty-five or older and did not have income or resources greater than that which is provided for in the regulations. 20 C.F.R. § 416.202(a)(1), (c), and (d). The scope of Plaintiff's income or financial resources was an issue that the ALJ did not reach because the ALJ found that Plaintiff had not reached the age of sixty-five. That determination, as described below, is supported by substantial evidence.

 A claimant bears the burden of establishing the age requirement for purposes of receiving SSI benefits. 20 C.F.R. § 416.801 ("An applicant for benefits ... shall file supporting evidence showing the date of his birth if his age is a condition of eligibility for benefits...."). The regulations provide for the type of evidence necessary to establish claimant's age and the manner by which that evidence is evaluated. *See* 20 C.F.R. §§ 416.802 ("Type of evidence to be submitted"), and 416.803 ("Evaluation of evidence"). With respect to the type of evidence, claimant:

> shall submit a public record of birth or a religious record of birth or baptism established or recorded before his fifth birthday, if available. Where no such document recorded or established before age 5 is available the individual shall submit as evidence of age another document or documents which may serve as the basis for a determination of the individual's date of birth provided such evidence is corroborated by other evidence or by information in the records of the Administration. ·

20 C.F.R. § 416.802. With respect to the evaluation of the evidence, the regulations provide:

> the highest probative value will be accorded to a public record of birth or a religious record of birth or baptism established or recorded before age 5. Where such record is not available, and other documents are submitted as evidence of age, in determining their probative value, consideration will be given to when such other documents were established or recorded, and the circumstances attending their establishment or recordation. Among the documents which may be submitted for such purpose are: school record, census record, Bible or other family record, church record of baptism or confirmation in youth or early adult life, insurance policy, marriage record, employment record, labor union record, fraternal organization record, military record, voting record, vaccination record, delayed birth certificate, birth certificate of child of applicant, physician's or midwife's record of birth, immigration record, naturalization record, or passport.

20 C.F.R. § 416.803. Finally, "[i]f the evidence submitted is not convincing, additional evidence may be required." 20 C.F.R. § 416.805.

In her initial application, Plaintiff submitted her birth certificate (Tr. 72–73) which reflected a birth date of December 5, 1927. This evidence was rejected because, according to the Secretary, it clearly had been altered (Tr. 71). Accordingly, the Secretary relied on the date of birth contained in an Immigration and Naturalization Service ("INS") form which reflected a birth date of October 8, 1939 (*Id.*).[2] In her request for reconsideration, Plaintiff submitted her husband's death certificate which reflected a December 5, 1927 birth date for Plaintiff (Tr. 78). This document, according to the Secretary, had been altered as well and was, therefore, rejected by the Secretary (Tr. 77). The ALJ considered both pieces of evidence and concluded that they lacked any probative value because they had been altered (Tr. 17). A review of the exhibits by this Court supports that conclusion. The Court notes that Plaintiff takes no issue with the ALJ's finding regarding the altered state of the documents.

Subsequent to her initial application and request for reconsideration, Plaintiff submitted additional documentary evidence to support her claim. The following chart represents a summary of the documentary evidence before the ALJ with a description of the type of document, the date the document was generated or dated, and the date of birth reflected in the document.

| Type of Document | Date | Birth Date |
|---|---|---|
| 1. Plaintiff's Birth Certificate (Ex. 2) (Tr. 71–73) | [unknown] | 12–5–27 |
| 2. Spouse's Death Certificate (Ex. 5) (Tr. 77–78) | [unknown] | 12–5–27 |
| 3. Resident Alien's Card (Ex. 9) (Tr. 89–90) | 7–10–87 | 12–5–27 |
| 4. War Veterans Widow's Pension Certificate (Ex. 13) (Tr. 96–101) | 2–25–52<br>2–25–74 | 10–8–27 |
| 5. Refugee Camp Printout (Ex. 11) (Tr. 92) | 2–5–87 | 10–8–27 |
| 6. Ohio Medicaid Card (Ex. 3) (Tr. 74) | 11–1–92 | 12–5–27 |
| 7. Affidavit Mai Xiong (Ex. 9) (Tr. 84–90) | 2–24–93 | 12–5–27 |
| 8. Affidavit Mai Yee Pha (Brother) (Ex. 12) (Tr. 94) | 12–22–92 | 12–5–27 |

In addition to the evidence described above, Plaintiff, through an interpreter testified at the hearing. Plaintiff's nephew Pao Vang assisted with the translation and also provided testimony. The ALJ summarized the testimony as follows:

The claimant reported she was born on December 5, 1927. She explained her husband died about 20 years ago which she subsequently noted was the same year her youngest child was born, or 1970. She did not know the date of her husband's birth, but testified when they married, she was 16 years old and he was 18 years old. The claimant stated she was married at the time North Vietnam invaded a province in Laos, or approximately 1954. The claimant testified she had been married for two years before her first child was born; this child died when he was three years and three months of age. After her first child was born, about one year later, she had a second baby who died within one month of birth. Her third child was born one year later. The claimant testified she had six children who came to the United States with her; two who died on the way to Thailand from Laos; two who remain in Thailand; and two who died as babies, one at three months and one at three years three months of age. She testified she came to the United States on July 10, 1987.

(Tr. 17). A review of the transcript supports the ALJ's summary of the testimony.

2. Although the form referenced in the "Report of Contact" (Tr. 71) is not included in the record, there appears to be no dispute that an initial I–94 INS document listed Plaintiff's birth date as October 8, 1939. There are several references to such a document by the parties and the ALJ. Thus, while the Court cannot independently review the document, it will presume its existence in the absence of any claims to the contrary.

In his written decision, the ALJ, as noted above, found that both the birth certificate and the death certificate had been altered and, therefore, were of no probative value (Tr. 16, 17). The ALJ also rejected the other documentary evidence submitted by Plaintiff. The ALJ explained:

> There is in the record an affidavit from the claimant's brother indicating the claimant's birthdate was December 5, 1927, but he was not born until April 16, 1937 and, therefore, would not know of his own knowledge when his sister was born if such was prior to his birth. Mai Xiong has sponsored an affidavit affirming the claimant was born on December 5, 1927, but the claimant's nephew testified Laotian people do not fix exact dates of when things happen, only certain times, *e.g.*, will remember something happened during the year of a flood but not what year that was. The affidavit cannot be accorded sufficient probative value to confirm a birthdate of December 5, 1927. Additionally, the refugee camp printout as well as a War Veteran Widow's Pension Certificate both record a birthdate of October 8, 1927, which differs from either the date urged by the claimant or the date previously determined by the SSA.

(Tr. 17.)

In reaching his decision that Plaintiff's birth date was October 8, 1939, the ALJ relied on her testimony and characterized it as the "best evidence." The ALJ found:

> The best evidence in the record is the claimant's own testimony; she testified she was married at 16 years of age and this occurred the year North Vietnam invaded a province in Laos, or approximately 1954. Hence, if the claimant was 16 years old in 1954, her birthdate was October 8, 1939 rather than December 5, 1927. If she married in 1943 (using 1927 as a birth year) she would have been in hiding from the Japanese at that time with her family. She testified she did not marry during World War II when the Japanese were present. Further support for the finding the claimant was born in October 1939 rather than 1927 is her testimony she had her first child two years after she was married which would be 1956; she stated she had a second child about one year later, then the second child died at three months of age and the first child died at three years, three months of age, or in 1959. The claimant then testified her third child (the oldest of her living children) was born about a year after her first born's death, or in 1960. The War Veteran Widow's Pension Certificate confirms the claimant's oldest living child was born on January 4, 1960. (Exhibit 13, p. 4). Thus, the birth of her third child is consistent with the claimant's testimony regarding the time when she was married and had her first three children, two of whom subsequently died. Additionally, the evidence indicates her youngest child was born in 1970. If the claimant were born in 1927, she would then have been 43 years old; if born in 1939, she would have been 31 years old.

(Tr. 18).

Plaintiff does not take issue with the findings of the ALJ on the state of the record described above. Rather, Plaintiff claims that this case should be remanded for consideration of the "new evidence" purportedly set forth in the May 24, 1995 Affidavit.

### A.

The Court's review is limited to the decision of the ALJ and the evidence before the ALJ. When the Appeals Council denies review of the ALJ's decision, the ALJ's decision becomes the final decision of the Secretary. It is the final decision of the Secretary that is reviewed by this Court and not that of the Appeals Council. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir.1993). Evidence submitted to the Appeals Council after the ALJ rendered his decision is not to be considered by this Court in its review of whether there is substantial evidence supporting the decision of the Secretary. *Cotton*, 2 F.3d at 696. The evidence is relevant only to the question of whether the Court should remand the case pursuant to the sixth sentence of 42 U.S.C.

§ 405(g). *Id.* A remand is appropriate when Plaintiff demonstrates that: (1) the evidence is new and material; and (2) there is good cause for failing to submit the evidence to the ALJ. 42 U.S.C. § 405(g); *Cotton*, 2 F.3d at 696; *Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988).

■ The "new evidence" offered by Plaintiff is the May 24, 1995 Affidavit executed by Plaintiff which is, in essence, a narrative response to the ALJ's written analysis supporting his finding that Plaintiff's date of birth is October 8, 1939. It is difficult to find that the May 24, 1995 Affidavit is "new" evidence when it merely represents additional "testimony" by Plaintiff, who previously testified at the hearing before the ALJ. Not only is the evidence, therefore, not "new," the May 24, 1995 Affidavit is not "material" as that term is contemplated under the statute and case law.

■ In *Sizemore*, 865 F.2d 709, the Sixth Circuit held that "[i]n order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." 865 F.2d at 711. Plaintiff has failed to show that there is a reasonable probability that the Secretary would have reached a different conclusion with respect to Plaintiff's date of birth if the May 24, 1995 Affidavit had been considered by the ALJ.

At the hearing, the ALJ was careful to elicit the relevant facts from Plaintiff. The facts set forth in the May 24, 1995 Affidavit are different from those elicited at the hearing. For example, Plaintiff now contends that she and her deceased husband were married in 1944 when she was sixteen years old (May 24, 1995 Affidavit at p. 1). The ALJ rejected a marriage date of 1944 on the basis of Plaintiff's testimony that she was not hiding from the Japanese army when she was married (Tr. 18). The Court also notes that the May 24, 1995 Affidavit contradicts her application which reflects a marriage date of 1943 (Tr. 59).

The May 24, 1995 Affidavit is also inconsistent with the documentary evidence in the record and Plaintiff's previous testimony regarding the number of children born to Plaintiff. As noted by Defendant, despite testifying that she lost only two children to early deaths (Tr. 34), she now reports three children dying at an early age (May 24, 1995 Affidavit at p. 1). The widow pension documents reviewed by the ALJ during the hearing include a listing of Plaintiff's children and that list reflects that Plaintiff had ten children between 1960 and 1970 (Tr. 101). The testimony of Plaintiff and the pension records indicate that Plaintiff had her "first living child," Saomai, in 1960. Plaintiff testified her first child was born in 1956, two years after her date of marriage in 1954 (Tr. 32–34). Her first child, according to Plaintiff, died approximately three years and three months later, or 1959 (Tr. 34, 46). Plaintiff testified that she had her second child after the death of her first child in 1959 (Tr. 46–47). According to Plaintiff, this child died at birth (*Id.*). Plaintiff testified that her "first living child," i.e., Saomai, was born a year after her second child's death, or 1960 (Tr. 34, 46–47). The list of children in the widow pension records reflect a birth date of 1960 for Saomai (Tr. 101). Saomai is the first child listed on the pension record (Tr. 101). Thus, Plaintiff's testimony and the list are somewhat consistent. The ALJ reviewed this list with Plaintiff at the hearing and confirmed that the list contained ten children born to Plaintiff excluding the two who died at an early age (Tr. 36–37). Plaintiff testified that her last child was born in 1970, the year her husband died (Tr. 37). Pao Vang, Plaintiff's nephew, also testified that her husband, his uncle, died in 1970 (*Id.*). The list is consistent with the testimony in this regard as well. Plaintiff's last child was, according to the list, born in 1970 (Tr. 101).

Plaintiff's new history, contained in the May 24, 1995 Affidavit, regarding the number of children and the dates of birth, is inconsistent with the previous testimony and the available documentary evidence, i.e., the pension record list (Tr. 101). In the May 24, 1995 Affidavit, Plaintiff identifies five chil-

dren born before 1960—not two as she previously testified. Plaintiff also identifies four more children born between 1964 and 1973. As noted above, the record indicates that her last child was born in 1970. In her May 24, 1995 Affidavit, she now claims that her husband died in 1972, not 1970.

The evidence contained in the May 24, 1995 Affidavit, therefore, is highly suspect given that state of the record before the ALJ. The May 24, 1995 Affidavit is contradictory to her earlier testimony and inconsistent with the list of her children contained in the pension records.

Finally, Plaintiff has failed to show any good cause as to why this testimony was not presented to the ALJ. A review of the transcript indicates that the ALJ went out of his way to develop a complete record. *See,* e.g., Tr. 35, 45–46, 50, 52–53, 54–55. For example, the ALJ's effort is reflected in his statements to counsel: "I'm willing to help you, you know, with this record. Anything we haven't thought of in terms—I thought hopefully to have gotten a hold of her husband's military record from Laos...." (Tr. 50). At another point, the ALJ states: "is there anything, anything we haven't explored in terms of trying to get some additional documents?" (Tr. 52). At the conclusion of the hearing, the ALJ agreed to keep open the record for thirty days after the hearing and Plaintiff made no application to submit additional testimony (Tr. 55–56). Plaintiff did present additional argument and a summation of the evidence within that time period (Tr. 103–107).

Counsel states in the Remand Motion that "he was not aware until after said decision that the Immigration and Naturalization Service had the *correct birthdate* of December 5, 1927 and so it was not the fault of the Administrative Law Judge or the Administrative Appeals Judge that wrong information was used upon which their decisions were based." (Remand Motion at p. 1) (emphasis added). In her Brief, Plaintiff seeks a remand and a "hearing so that she may provide the *correct record* which was submitted to the US [sic] Immigration Service and

approved by it." (Plaintiff's Brief at p. 2) (emphasis added). It is not clear what is meant by Plaintiff's references to the "correct birth date" or "correct record."

Nonetheless, the administrative record does contain Plaintiff's Resident Alien card which carries a December 5, 1927 birth date (Tr. 89). The record also reflects a letter dated September 28, 1992 from Nancy Dodds, a Refugee Resettlement Social Worker, who states:

> I am writing to clarify the discrepancy in the birthdate for [Mai Yee Pha]. When she arrived in the United States as a refugee, the birthdate on her I–94 document was October 8, 1939.

> However, Ms. Pha later obtained a birth document from Laos which confirmed that her actual birthdate as December 5, 1927. This document was translated at the International Institute and accepted by the Immigration Service when she applied for her "green card." Ms. Pha did not realize that she should have corrected her birthdate at the Social Security office. Consequently, there are conflicting birth dates for her.

(Tr. 85). Counsel for Plaintiff made mention of both the "green card" and the September 28, 1992 letter from Ms. Dodds in his March 5, 1993 letter to the ALJ (Tr. 91). Counsel for Plaintiff also raised the issue of the INS's determination of Plaintiff's birth date with the ALJ in his post-hearing submission (Tr. 103). Thus, the evidence regarding some "change" in the INS's position was a part of the record before the ALJ, known by counsel for Plaintiff, and considered by the ALJ. Further, Plaintiff makes no effort to explain what change the INS made or the circumstances surrounding the change. There is also no indication of what documents or records prompted this claimed change.

Finally, Plaintiff claims that she failed to provide the correct information to Defendant because she suffers from "brain damage" as a result of being hit in the head when her husband and she were hiding from the North Vietnamese. (*See* May 24, 1995 Affidavit at p. 2). As noted by Defendant, Plaintiff has never claimed a disability in this case. Fur-

ther, the Court notes a complete absence of any such allegation during the hearing, either by Plaintiff or by her nephew Pao Vang.

The Court finds that Plaintiff has failed to demonstrate that a remand is warranted. The May 24, 1995 Affidavit does not constitute new and material evidence, and Plaintiff has not demonstrated good cause for not having submitted such an affidavit to the ALJ.

### B.

Other than the request for a remand, Plaintiff offers no other objection to the ALJ's findings. Notwithstanding the absence of any additional argument, the Court has reviewed the findings of the ALJ, the transcript, and exhibits, and finds that the ALJ's decision is supported by substantial evidence. As set forth above, the ALJ thoroughly reviewed the often conflicting documentary evidence and testimony to reach the most reasonable conclusion with respect to Plaintiff's age. While the Court may not agree with every conclusion drawn from the evidence, it is not this Court's province to substitute its judgment for that of the ALJ when, as here, the overall determination is supported by substantial evidence.[3]

In *Webb v. Bowen,* 683 F.Supp. 1319 (D.Kan.1988), the district court, faced with a review of the Secretary's decision that a disability claimant's birth date was 1920, held:

> [v]iewing the evidence as a whole, the court must agree that the substantial evidence establishes a birth year of at least 1920, possibly 1921. No one piece of evidence can be given any greater weight than another; the documents appear to be equally unreliable and equally inconsistent.... *[T]o the extent that any substantial evidence of plaintiff's age exists, the court does not believe that the Secretary's final decision is inconsistent with it.*

683 F.Supp. at 1321 (emphasis added). The same reasoning holds true here. While the documentary evidence is inconsistent, and in some instances unreliable, the testimony of Plaintiff given at the hearing supports that ALJ's determination when compared to the limited credible documentary evidence.

At the same time, the Court is also cognizant that Plaintiff has been pursuing her request for benefits since November of 1992 (Tr. 58). Plaintiff is approaching the third anniversary of her application. The comments by the district judge in *Webb* are instructive on this point as well.

> The court does sympathize with plaintiff, as it appears from correspondence in the record that plaintiff is exasperated with the legal processes required to establish the date on which her retirement benefits should have begun. It may seem relatively simple for the Social Security Administration to simply accede to a claimant's persistent assertions in cases such as this, where a mere one year's worth of retirement benefits is at stake. Millions of Americans turn retirement age each year, however, and the taxpayers have a very large stake in the Secretary's quest to establish the true entitlement of each claimant. The court cannot fault the government for jealously guarding the disbursement of Social Security funds.

683 F.Supp. at 1321. While there is more than one year of benefits at stake here—twelve to be exact—the point is the same. The government has an obligation, under the current state of the law, to award benefits only where the evidence supports such an award. The ALJ found that the evidence did not support such an award in this case, and that determination is supported by substantial evidence.

### IV. Conclusion.

For the reasons stated above, Plaintiff's Motion for Remand is denied and the decision of the Commissioner is affirmed.

IT IS SO ORDERED.

---

**3.** For example, the rationale articulated by the ALJ for discounting the affidavits of Me Xiong (Tr. 84–90) and Mai Yee Pha (Tr. 94) is somewhat speculative.

**516**

**JUDGMENT ENTRY**

For the reasons set forth in the Memorandum and Opinion filed contemporaneously, judgment is hereby entered in favor of Defendant against Plaintiff.

Accordingly, it is hereby ordered and adjudged that the decision of the Commissioner, denying Supplemental Security Income benefits to Plaintiff, Mai Yee Pha, is hereby affirmed.

IT IS SO ORDERED.

SIGNED and ENTERED on this 29th day of September, 1995.