86 F.3d 1155
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Edith M. COLEMAN, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of Social Security Defendant-Appellee.
 No. 95-5749.
 United States Court of Appeals, Sixth Circuit.
 May 24, 1996.
 
 Before: BROWN, MARTIN, and SILER, Circuit Judges.
 SILER, Circuit Judge.
 
 
 1
 Plaintiff, Edith M. Coleman, appeals the judgment affirming the denial of social security disability and supplemental security income benefits. For the reasons stated herein, we affirm the decision of the district court.
 
 I.
 
 2
 Coleman was born on August 24, 1949, and was forty-three years old at the time of the decision of the administrative law judge ("ALJ") in 1993. She completed high school and attended classes in clerical training at a business school. She worked at a manufacturing hardware plant from 1977 until 1989 as a production assembler. She has also worked in day care, as a secretary-bookkeeper and as a nurses' aide.
 
 
 3
 In 1988, Coleman had surgery to treat carpal tunnel syndrome ("CTS") in her right wrist. Coleman's symptoms dissipated and she returned to work. After she began experiencing symptoms of CTS in her left hand, physicians reported that her work should not involve repetitive hand movement. Coleman filed an application for disability insurance benefits ("DIB") in October, 1989, alleging that her CTS became completely disabling on September 11, 1989. That application was denied.
 
 
 4
 Coleman filed an application for DIB and supplemental security income ("SSI") on October 24, 1991, alleging an onset of disability on September 11, 1989. Her application was denied initially and upon reconsideration. After a hearing, an ALJ ordered a consultative psychological evaluation. After a second hearing in 1993, a different ALJ determined that Coleman was not disabled and that her October 1989 application should not be reopened.
 
 
 5
 At the second hearing Dr. Joseph Nesbitt, a medical advisor, testified as to the validity of psychological tests performed by Paula Halcomb, the consultative psychologist. Dr. Nesbitt stated that Coleman was suffering from an affective disorder sufficient to meet Section 12.04 of the Listing of Impairments. Dr. Nesbitt stated that Coleman's limitations place moderate restrictions on her activities of daily living, cause marked difficulty in her social functioning and cause frequent deficiencies in her concentration.
 
 
 6
 After the Appeals Council declined Coleman's request to review the ALJ's decision, Coleman filed a claim in the district court. A magistrate judge recommended that the Commissioner's decision be reversed and remanded for the payment of DIB and SSI, but the district court affirmed the Commissioner's decision.
 
 II.
 
 7
 Review of a denial of disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. Richardson v. Perales, 402 U.S. 389, 401 (1971). This court may not reconsider the case de novo, resolve evidentiary conflicts, or resolve questions of credibility. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984). This court may only consider the evidence that was before the ALJ. Matthews v. Weber, 423 U.S. 261, 263 (1976); Casey v. Secretary of Health and Human Servs., 987 F.2d 1230, 1233 (6th Cir.1993) (per curiam). This court must consider the evidence in the record taken as a whole, Wyatt v. Secretary of Health and Human Servs., 974 F.2d 680, 683 (6th Cir.1992), and may consider any evidence in the record. See Walker v. Secretary of Health and Human Servs., 884 F.2d 241, 245 (6th Cir.1989).
 
 
 8
 The third step of the sequential evaluation process requires a determination as to whether a claimant's severe impairments either meet or are equivalent in severity to one or more of the conditions deemed presumptively disabling and listed in Appendix 1 to Regulations No. 4, Subpart P. When an impairment manifests the specific findings described in the set of medical criteria for a particular listed impairment, it meets that listed impairment. 20 C.F.R. §§ 404.1525(d) and 416.925(d). At this step, the claimant bears the burden of bringing forth evidence to establish that he meets or equals a listed impairment. Evans v. Secretary of Health and Human Servs., 820 F.2d 161, 164 (6th Cir.1987) (per curiam).
 
 
 9
 Section 12.04 of the Listing of Impairments lists criteria for affective disorders. A claimant must show that at least two of the criteria listed in § 12.04B are met. Those criteria are
 
 
 10
 1. Marked restriction of activities of daily living; or
 
 
 11
 2. Marked difficulties in maintaining social functioning; or
 
 
 12
 3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
 
 
 13
 4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).
 
 
 14
 20 C.F.R. Part 404, Subpart P, App. 1.
 
 
 15
 Coleman first alleged a mental impairment at the first hearing when she claimed to be "nervous" and that she "had quite a bit of depression" but was not "financially able to see any treatments" for those impairments. The ALJ ordered a consultative psychological evaluation which was performed by Paula Halcomb, a psychologist. Coleman was not examined by any other mental health professional.
 
 
 16
 The ALJ's decision that Coleman's impairment did not meet the criteria of the listed impairment is supported by substantial evidence.[1] The ALJ found that Coleman had moderate restrictions on the activities of her daily living; had slight difficulties in maintaining social functioning; seldom experienced deficiencies of concentration, persistence, or pace; and never experienced episodes of deterioration or decompensation in work or work-like settings.[2]
 
 
 17
 Substantial evidence supports the ALJ's finding that Coleman had only moderate restrictions on the activities of her daily living. "[T]he quality of these activities is judged by their independence, appropriateness, and effectiveness." 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.00.C.1. Coleman testified that she lived by herself. The report of Halcomb's evaluation indicates that Coleman took care of her home, prepared meals for herself, was often visited by family members, watched television, listened to the radio, left her home about three times each week, visited her mother, regularly talked on the telephone, attended church weekly, groomed herself daily, and drove herself (to Halcomb's examination). As there is very little evidence that Coleman's daily activities were restricted, the ALJ's finding in this regard is supported by substantial evidence.
 
 
 18
 Substantial evidence supports the ALJ's finding that Coleman had only slight difficulties in maintaining social functioning. "Social functioning refers to an individual's capacity to interact appropriately and communicate effectively with other individuals." 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.00.C.2. Coleman interacted appropriately and communicated effectively at the hearings. Halcomb wrote, "Her ability to relate to the examiner reflected no significant impairment as she was friendly, cooperative, and attempted to express herself adequately." Halcomb also wrote, "She was a friendly and cooperative individual who interacted with the examiner appropriately." Coleman was often visited by family members, visited her mother regularly, and talked on the telephone with friends. Coleman testified that her ability to "really visit or socialize" with her "female acquaintances" is limited only because "most of the time they're at work." As there is very little evidence that Coleman had difficulties in maintaining social functioning generally, interacting appropriately, or communicating effectively, the ALJ's finding in this regard is supported by substantial evidence.
 
 
 19
 Substantial evidence supports the ALJ's finding that Coleman seldom experienced deficiencies of concentration, persistence, or pace. "Concentration, persistence and pace refer to the ability to sustain focused attention sufficiently long to permit the timely completion of tasks commonly found in work settings." 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.00.C.3. Halcomb reported: 1) that Coleman "handled her frustration appropriately" when taking tests during the psychological evaluation; 2) "She had difficulty concentrating at times during the testing...."; 3) "Her ability to sustain attention to perform simple, repetitive tasks was also basically appropriate, and she displayed adequate perseverance."; and 4) "She had difficulty concentrating on [an] arithmetic subtest ... and when her concentration was poor, questions would have to be repeated to her." The ALJ noted that "at the hearing, [Coleman] had no problem sustaining attention and exhibited good memory in answering all questions. Ms. Halcomb found the claimant able to perform simple repetitive tasks."[3] As there is evidence that Coleman's ability to focus her attention was limited in limited situations, substantial evidence supports the ALJ's findings in this regard.
 
 
 20
 Substantial evidence supports the ALJ's finding that Coleman never experienced episodes of deterioration or decompensation in work or work-like settings because there was no evidence that Coleman had experienced this sort of deterioration and she admitted that she only began feeling depressed after her employment ended.
 
 
 21
 At the second hearing, Dr. Joseph Nesbitt participated as a medical advisor. He based his opinion on Halcomb's evaluation, Coleman's testimony and Coleman's scores on psychological tests administered by Halcomb. He testified that Coleman was "severely depressed." He also testified that Coleman's impairment met the criteria of § 12.04 of the Listing of Impairments because she had a moderate restriction of daily activities, marked difficulties in maintaining social functioning, and frequent deficiencies of concentration.
 
 
 22
 Relying on Barker v. Shalala, 40 F.3d 789 (6th Cir.1994), Coleman claims that Dr. Nesbitt's "opinion on Ms. Coleman meeting the Listing Section must be accepted" and that that opinion "would require a finding of disability." In Barker, the claimant argued that the ALJ erred in accepting the testimony of a medical advisor over that of a consultative examiner. 40 F.3d at 794. The court held that the ALJ was entitled to credit the testimony of the medical advisor without regard to whether it was consistent with the testimony of the consultative examiner. Id. The court did not hold, reason, or imply that the ALJ was required to accept the testimony of the medical advisor. The language of the regulations applicable to an ALJ's use of medical advisors is permissive, not mandatory: "[ALJ]s may ask for and consider the opinions of medical advisors on the nature and severity of your impairment(s) and whether your impairment(s) equals the requirements of any listed impairment...." 20 C.F.R. §§ 404.1527(f)(2) (emphasis added). As the ALJ's (and thus Commissioner's) decision is supported by substantial evidence, it must be affirmed, even if Dr. Nesbitt's testimony is substantial evidence which supports the opposite conclusion. See Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir.1986) (en banc).
 
 III.
 
 23
 The ALJ found that Coleman retained the residual functional capacity ("RFC") to perform substantial gainful activity. At steps four and five of the sequential evaluation process, it must be determined whether a claimant's impairment(s) prevents the claimant from performing any past relevant work or other work which exists in significant numbers in the national economy. A decision at step four or five requires a determination with specific findings regarding a claimant's RFC. That determination requires a medical assessment of what an individual can do in a work setting despite functional limitations imposed by all of his medically determinable impairments. 20 C.F.R. §§ 404.1545 and 416.945. A claimant's physical and mental abilities are assessed in determining an individual's RFC.
 
 
 24
 The ALJ considered the effects of Coleman's CTS and depressive disorder. The ALJ found that Coleman's CTS restricted her ability to perform work requiring sustained repetitive hand movements. The limitations imposed by Coleman's CTS are not disabling. After Coleman's surgery on her right hand, her treating physician noted that her symptoms dissipated and she was able to return to work. When she experienced CTS-related problems in her left hand, an orthopedic surgeon recommended only that she not perform work requiring sustained repetitive hand movements. Additional examinations resulted in no other restrictions.
 
 
 25
 Substantial evidence supports the ALJ's finding that Coleman retained the psychological abilities required by competitive, remunerative employment. The medical advisor, Dr. Nesbitt, testified that Coleman had poor or no ability to deal with work stresses. He based that testimony on his conclusion on listing § 12.04 and his review of the RFC evaluation completed by Halcomb. Halcomb's RFC evaluation indicated that Coleman had an adequate ability to follow simple instructions, sustain attention, and relate to people, but suffered a "mild to moderate impairment" in her ability to tolerate work stresses. Halcomb's RFC evaluation also indicated that Coleman had: 1) a "good" ability to "follow work rules," "relate to co-workers," and "interact with supervisors" and 2) "fair" abilities to "deal with [the] public," "use judgment," "deal with work stresses," "function independently," and "maintain attention/concentration." On that evaluation "good" is defined as "Ability to function in this area is limited but satisfactory" and "fair" is defined as "Ability to function in this area is seriously limited but not precluded."
 
 
 26
 The ALJ asked a vocational expert ("VE") hypothetical questions in which the VE was to consider what jobs were available to one with: 1) the limitations suggested by Halcomb's evaluation and 2) the inability to work in jobs requiring sustained repetitive hand movement. The VE testified that there would be several jobs available for that person.[4] The ALJ's use of VE testimony was appropriate.[5] See Barker, 40 F.3d at 795. The testimony of the VE and Halcomb's properly credited evaluation amount to substantial evidence supporting the ALJ's decision that Coleman retained the psychological abilities required by competitive, remunerative employment.
 
 
 27
 Coleman contends that the ALJ failed to apply Social Security ruling 85-15. "Social Security Acquiescence Rulings are ... binding on all components of the Administration, except with respect to the relitigation procedures...." 20 C.F.R. § 404.406(b)(2). Ruling 85-15 is not directly applicable to this case because it addresses the evaluation of nonexertional impairments without an exertional component and Coleman's claim involved exertional impairments related to her CTS. For RFC assessments of claimants with exertional and nonexertional impairments, Ruling 85-15 refers to Ruling 83-14.[6] Coleman does not address Ruling 83-14 nor contend that the ALJ's decision has failed to comply with it.
 
 IV.
 
 28
 Coleman contends that her prior claim should be reopened because no consideration of her mental impairment was made in the determination of that claim. Because Coleman raises no constitutional claim and the ALJ's decision not to reopen a prior determination is not a final claim, this court may not review that decision. See Califano v. Sanders, 430 U.S. 99, 107-09 (1977); Cottrell v. Sullivan, 987 F.2d 342, 345 (6th Cir.1993). This court need not determine whether Coleman waived this claim by failing to object to the magistrate judge's report.
 
 
 29
 AFFIRMED.
 
 
 
 [1]
 Coleman contends that Dr. Nesbitt's testimony must be accepted because it is uncontradicted. The evidence supporting the ALJ's decision contradicts Dr. Nesbitt's testimony generally. Only Dr. Nesbitt testified with an opinion as to whether the § 12.04 listing was met. There was, however, other evidence relevant to the § 12.04B criteria and that evidence was properly considered by the ALJ. In considering that evidence, the ALJ did not "act as his own medical expert" as Coleman contends
 
 
 [2]
 The ALJ is required to prepare a "standard document outlining the steps of" the disability determination procedure. 20 C.F.R. § 404.1520a(d). In this case, the ALJ prepared a Psychiatric Review Technique Form ("PRTF"). "The [ALJ] may complete the document without the assistance of a medical advisor ... [or] may call a medical advisor for assistance in preparing the document." 20 C.F.R. § 404.1520a(d)(1)(i-ii). The PRTF lists the § 12.04B criteria applied in this case
 
 
 [3]
 An "ALJ may distrust a claimant's allegations of disabling symptomatology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other." Moon v. Sullivan, 923 F.2d 1175, 1183 (6th Cir.1990). This court has also held that an ALJ must cite some evidence other than his personal observations in rejecting a claimant's complaints of severe and disabling pain. See Martin v. Secretary of Health and Human Servs., 735 F.2d 1008, 1010 (6th Cir.1984). In this case, the ALJ properly cited Halcomb's report along with his personal observations
 
 
 [4]
 When asked to consider the limitations Dr. Nesbitt described, the VE stated that the hypothetical person would not be able to hold any type of competitive employment
 
 
 [5]
 Coleman contends, "It was improper for the vocational expert to consider Ms. Coleman's work that was performed over 15 years ago." The Social Security Regulation's 15-year cutoff to determine past relevant work in 20 C.F.R. §§ 404.1565(a) and 416.965(a) is not mandatory. Smith v. Secretary of Health and Human Servs., 893 F.2d 106, 109 (6th Cir.1989)
 
 
 [6]
 Coleman argues that because 1) Ruling 85-15 requires a finding of disability when the claimant has suffered "[a] substantial loss of ability to meet any of these basic work-related activities" and 2) Halcomb evaluated Coleman's abilities to "deal with [the] public," "use judgment," "deal with work stresses," "function independently," and "maintain attention/concentration" as only "fair," Ruling 85-15 requires a finding of disability in this case