**Clarence YOUNG, Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant.**

No. 02–10087–BC.

United States District Court, E.D. Michigan, Northern Division.

Dec. 22, 2004.

---

Gregory W. Peterson, Elverson, Vasey, Des Moines, IA, Lewis M. Seward, Seward, Tally, Bay City, MI, for Plaintiff.

Robert W. Haviland, U.S. Attorney's Office (Flint), Flint, MI, Janet L. Parker, U.S. Attorney's Office (Bay City), Bay City, MI, for Defendant.

## *OPINION AND ORDER REJECTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, GRANTING IN PART AND DENYING IN PART THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING FOR FURTHER PROCEEDINGS*

LAWSON, District Judge.

The plaintiff filed the present action on April 1, 2002 seeking review of the Commissioner's decision denying the plaintiff's claims for a period of disability, disability insurance benefits, and supplemental security income benefits under Title II and XVI of the Social Security Act. The case was referred to United States Magistrate Judge Charles E. Binder pursuant to 28 U.S.C. § 636(b)(1)(B) and E.D. Mich. LR 72.1(b)(3). Thereafter, the plaintiff filed a motion for summary judgment to reverse

the decision of the Commissioner and award him benefits. The defendant filed a motion for summary judgment requesting affirmance of the Commissioner's decision, and the plaintiff filed a response. Magistrate Judge Binder filed a report and recommendation on January 3, 2003 recommending that the plaintiff's motion for summary judgment be denied, the defendant's motion for summary judgment be granted, and the findings of the Commissioner be affirmed. The plaintiff filed timely objections to the recommendation, and this matter is now before the Court.

The Court has reviewed the file, the report and recommendation, and the plaintiff's objections and has made a *de novo* review of the administrative record in light of the parties' submissions. The plaintiff's objections generally challenge the magistrate judge's conclusion that substantial evidence supports the decision of the Administrative Law Judge (ALJ) that there are jobs in the national and regional economy that the plaintiff is capable of performing and criticizes the magistrate judge's failure to fairly address the issues raised by the plaintiff. The plaintiff made four specific arguments in his motion for summary judgment and he incorporates them in his objections. First, the plaintiff contends that the vocational expert's description of job requirements conflicted with the descriptions in the Dictionary of Occupational Titles concerning the necessary reasoning and language development skills for those jobs. The plaintiff asserts that the failure to account for the discrepancy violates Social Security Ruling (SSR) 00–4p and results in the failure of the Commissioner to carry its burden that the plaintiff is capable of performing work. Second, the plaintiff argues that the ALJ failed to properly weigh evidence of a workshop evaluation that demonstrates the plaintiff's mental disability as it related to the pace of his work and the ability to engage in competitive employment. Third, the plaintiff asserts that the ALJ failed to consider the combined effect of the plaintiff's physical impairments and mental impairments on his overall ability to perform. Fourth, the plaintiff states that the hypothetical questions posed by the ALJ fail to incorporate the plaintiff's functional illiteracy, poor concentration, loss of left hand strength, and sitting and standing limitations, and therefore was invalid.

The plaintiff, presently fifty-one years old, worked for twenty-two years as a material handler for the General Motors Corporation and two years in the housekeeping department of a hospital until he stopped working as a result of a slip-and-fall injury. He applied for a period of disability, disability insurance benefits, and supplemental security income on June 24, 1996, but the application was denied initially and on reconsideration on January 29, 1997, and the plaintiff did not pursue his appellate remedies. He filed a second application on September 30, 1997 when he was forty-four years old alleging again that he last worked on June 1, 1993.

In his latest application for benefits, the plaintiff alleged that he was unable to work due to memory loss, borderline intellectual functioning, and various physical injuries to his neck, back, right knee and thigh, and left elbow, hand, and foot. This application likewise was denied initially and on reconsideration, and the plaintiff thereafter requested an administrative hearing. On December 4, 1998, he appeared before ALJ Andrew T. Palestini in Ottumwa, Iowa when he was forty-five years old, and asked the ALJ to reopen the prior determination in addition to reviewing the denial of his current application. ALJ Palestini filed a decision on July 20, 1999. The ALJ dismissed the plaintiff's request for a determination of disability and benefits before January 29,

1997 on the basis of administrative *res judicata.* *See* 20 C.F.R. § 404.957(c)(1). The plaintiff does not challenge that part of the ruling in this Court. The ALJ next found that the plaintiff was not disabled by applying the five-step sequential analysis prescribed by the Secretary in 20 C.F.R. §§ 404.1520, 416.920. The ALJ concluded that the plaintiff had not engaged in substantial gainful activity since June 1, 1993 (step one); the plaintiff's carpal tunnel syndrome in the left hand, plantar fasciitis in the left foot, internal derangement of the right knee, and low average intelligence were "severe" within the meaning of the Social Security Act (step two); the plaintiff did not have an impairment or combination of impairments that met or equaled a listing in the regulations (step three); and the plaintiff could not perform his previous work, which was characterized as unskilled and at the medium and very heavy exertional levels (step four).

In applying the fifth step, the ALJ concluded that the plaintiff had the residual functional capacity to perform a range of work that required lifting up to thirty-five to forty pounds but did not include using his right leg to operate foot controls, exposure to heights or climbing, or prolonged walking or concentration; and required only simple, routine, repetitive work learned by demonstration and verbal instructions, but did not require him remember complex instructions or data, deal with written instructions or writing, concentrate for a prolonged period, handle more than a few changes in his work duties, or use more than basic judgment. Relying on the testimony of a vocational expert, the ALJ found that there were a significant number of jobs in the national economy that fit within these restrictions including assembler, laundry sorter, hand packager, document preparer, and locker room attendant. The ALJ concluded, therefore, that the plaintiff was not disabled within the mean-ing of the Social Security Act. Following the decision by the ALJ, the plaintiff appealed to the Appeals Council, which denied the plaintiff's request for review on February 5, 2002. This action followed.

The parties agree that the plaintiff has the burden to prove that he is disabled and therefore entitled to benefits. *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir.1994); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir.1990). Under 42 U.S.C. §§ 423(d)(1)(A) & (B) and 1382c(a)(3)(A) & (B), a person is disabled if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" and the impairment is so severe that the person "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful activity which exists in the national economy." Further, "[a] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(1)(C), 1382c(a)(3)(D).

To determine disability, the Commissioner has prescribed the five-step process noted above and set forth in 20 C.F.R. §§ 404.1520; 416.920. However, if the plaintiff has satisfied his burden through the first four steps of the analytical process, the burden shifts to the Commissioner to establish that the plaintiff possesses the residual functional capacity to perform other substantial gainful activity. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir.1987); *see also Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). "To meet this burden, there must be a finding supported by substantial evidence that plaintiff has the vocational qual-

ifications to perform specific jobs." *Varley,* 820 F.2d at 779 (internal quotes and citations omitted).

The standard of review of an ALJ's decision is deferential, and the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). " 'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Kirk v. Sec. of Health & Human Servs.,* 667 F.2d 524, 535 (6th Cir.1981) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). However, a substantiality of evidence evaluation does not permit a selective reading of the record. "Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler,* 745 F.2d 383, 388 (6th Cir.1984) (internal quotes and citations omitted). *See also Laskowski v. Apfel,* 100 F.Supp.2d 474, 482 (E.D.Mich.2000). If the Commissioner's determination is not supported by substantial evidence on the whole record, the administrative decision must be reversed and the case remanded for further action. *See Howard v. Comm'r of Social Sec.,* 276 F.3d 235, 242–43 (6th Cir.2002).

The plaintiff had several physical complaints, which he described at the administrative hearing. The plaintiff underwent right knee surgery in 1986 and has had minor trouble with the knee since. In 1993, he injured his neck, and right knee and thigh after falling off a porch. His neck hurts when he turns his head to the left, and his back hurts all of the time, especially when he bends over. The plaintiff experiences left foot pain caused by plantar fasciitis. He has trouble holding objects in his non-dominant left hand because of carpal tunnel syndrome. A walk of three to four blocks causes acute pain in his back, and right knee and thigh. In addition, he complains of minor depression and memory loss.

The plaintiff also is functionally illiterate. He testified that he could make out a grocery list and read it, but he is unable to obtain a driver's license in Iowa because he cannot take the written test. He also has borderline intellectual functioning with a full-scale Intelligence Quotient of 72. A consulting psychologist, Tonita Rios, Ph. D., evaluated the plaintiff on October 21, 1997 and administered a standard battery of tests. She predicted that the plaintiff "will be able to carry out instructions, maintain attention, concentration and pace," but subsequent work-skills testing did not prove her prediction accurate.

In February 1999, the plaintiff submitted to a comprehensive vocational evaluation administered by the Hope Haven Area Development Corporation in Burlington, Iowa. The ALJ made reference to the evaluation in his decision, noting that the plaintiff needed sitting breaks after standing for about an hour, he ought not be required to perform tasks requiring strength or repetitive motion in the wrists, he was capable of maintaining attention and concentration, and he could follow simple as well as more complex instructions. The ALJ then concluded, "No additional specifics regarding his residual functional capacity were offered." Tr. at 24. However, the examiner actually made the following additional observations:

> Clarence only completed school through the 9th grade and he reports that this was in special education classes. Clarence does not have good functional reading abilities. *This would hinder him on*

*numerous jobs and will be a barrier for transportation needs as he will not have the ability to obtain a driver's license.*

. . . . .

Clarence's overall capability in fine motor skills is 67%. Clarence followed all test methods exactly as shown. · He was very focused and very precise on all of the tests. His movements were very deliberate and he seemed to be concentrating on doing the task correctly. Clarence's highest score was 74% on the most basic task. His scores generally decreased as the task became more difficult with the exception of two tests. On the simple assembly tests that require judgment as well as good dexterity he averaged 54%. *This would indicate that his rate on piece rated jobs may rise somewhat, but not to competitive levels* and on jobs that are more physically strenuous or require greater judgment and decision making skills would not likely increase to the 54% average.

. . . . .

While in the Evaluation Program, Clarence had the opportunity to [sic] on different production jobs. He worked a total of 17.03 hours on piece rated jobs with an average productivity rate of 33.52%. He also worked on hourly paid work a total of 23 hours. He was timed on the beverage sort while in Evaluation for a rate of 20% as compared to competitive standards. This is generally consistent with his overall work pace on fine motor skills. *Based on these rates, it should be noted that Clarence works at a far slower rate than what is considered competitive.*

Tr. at 318–19 (emphasis added). The Court believes that these findings are indeed significant, and if accepted they would have a significant impact on the plaintiff's residual functional capacity. Yet the ALJ appears to have· ignored this evidence, which concludes that the plaintiff cannot work at a competitive pace, and which is uncontradicted in the record except, perhaps, by the prediction of Dr. Rios sixteen months earlier.

 Neither this Court nor the ALJ "may [ ] focus and base [its] decision entirely on a single piece of evidence, and disregard other pertinent evidence." *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir.1978). Certainly the ALJ is entitled to weigh the evidence and make credibility determinations, as he did in evaluating the plaintiff's own testimony, and he may incorporate those findings into a hypothetical question to the vocational expert. *See Jones v. Comm'r of Social Sec.,* 336 F.3d 469, 476 (6th Cir.2003) (holding that "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability," and "can present a hypothetical to the [vocational expert] on the basis of his own assessment if he reasonable deems the claimant's testimony to be inaccurate"). However, he may not pick and choose the portions of a single report, relying on some and ignoring others, without offering some rationale for his decision.

The ALJ discussed the test results with the vocational expert at the continued administrative hearing. The vocational expert expressed doubts about the plaintiff's ability work in a competitive environment.

ALJ: Secondly I'd like you to consider the additional affects [sic] that have been determined from some vocational testing. So that doing standing of one, one hour to one and one quarter hour as he would need five to ten minutes sitting breaks. And he should not have a need for full hand, full strong hand strength, a repetitive

wrist action. He could not do sharp tugging with the hand such as when one was stripping wire. Work should not involve a consistent fast pace. The job should follow an orderly sequence so that he doesn't have to determine how to sequence the actions of the jobs. Again he should learn the job by verbal instruction and demonstration. In the work processes that he has a good attention to detail and a fair ability to change tasks. Over all fine motor skill is 67% but with good focus on the work product and precision. Testing ability was up to 74% on the most basic tasks, however in simple assembly where judgement and good dexterity were required he averaged about 54% pacing. With those additional factors would he still be able to do the representative three jobs that you listed?

VE: The, the hand packager and the assembly position, in my opinion, would be precluded with this hypothetical, Your Honor. I guess I have a question about the standing—

ALJ: Sure.

VE:—for one and a quarter hours. Is that five to ten minutes of rest period or?

ALJ: It's five to ten minutes sitting while working.

VE: Okay. Again the assembly and the hand packager with the, the fine motor skills you're stating I believe 54 percentile?

ALJ: Fifty-four percent was on simple assembly using judgement—

VE: Correct.

ALJ:—and good dexterity.

VE: Correct. In my opinion it would preclude the two positions. The laundry sorter could still be performed.

ALJ: Would laundry sorter be the only position possible or are there additional positions that would still be possible?

VE: You would be looking at a less than full range of light with the need to sit after an hour to an hour and a quarter, and also the, the fine motor skills being at, at 54% level. *I think you would preclude many occupations would not be competitive level there.* Could be positions such as a at the sedentary level, document prepare for microfilm, 249.587–018. Approximately 500 positions in Iowa, 50,000 positions nationally. Locker room attendant, 358.677–014 at the light level. Approximately 300 positions in Iowa, 50,-000 positions nationally.

ALJ: Do you have a copy of Exhibit 18F, the vocational report?

VE: No, I do not.

ALJ: I wanted to you ask to specifically look at page—do you have your copy?

VE: Yes, I do.

ALJ: Okay. It's the page of the percentage numbers. And basically what I was going to ask you is to look at it and tell me if there's anything that you feel is significant upon those that the report or the percentage numbers of his processing.

. . . . .

ALJ: Those results?

VE: As you had in the hypothetical the fine motor, simple assembly, the fitting, twisting, the fitting, decisions making, also this selecting one from many marbles, select one place in the precise area, seemed considerably low at, at 50%, 58% 65%.

ALJ: Would it would your review of those that summary sheet with those scores have any affect [sic] on your testimony about the ability to perform

such jobs as the hand packer—I'm sorry. The hand packager, the document prepper [sic], the locker room attendant?

VE: I would have some question about I know in your hypothetical that you had no fast paced consistent fast paced work. *With the low scores indicated on, on this evaluation I guess I would question if there may at times be a slow pace needed for the Claimant.*

ALJ: And if you've acquired a slow pace would that affect your response to the questions?

VE: Yes, it would. *In my opinion that may preclude competitive employment.*

Tr. at 81–83 (emphasis added). However, there is no discussion in the written decision of these concerns and limitations or why the ALJ rejected the test results and the answers to the hypothetical questions based on them.

The ALJ posed alternate hypothetical questions to the vocational expert. Under one version, the expert stated that the plaintiff could perform work as an assembler, laundry sorter, and hand packager. Under another version, the expert stated that the plaintiff would work as a laundry sorter, document preparer, and locker room attendant. In listing these jobs, the vocational expert made reference to their index listings in the Department of Labor's *Dictionary of Occupational Titles* (*DOT*). The plaintiff claims that the requirements of reasoning and language development stated for these jobs in the *DOT* exceed the plaintiff's capability. For instance, each of the jobs require reasoning development of at least "Level 2," and language development of "Level 1" or "Level 2." The *DOT* defines level 2 reasoning development as follows: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." U.S. Dept. of Labor, *Dictionary of Occupational Titles* app. c, at 3 (4th ed.1991). The language development levels are defined as follows:

LEVEL 1:

Reading:

Recognize meaning of 2,500.00 (two- or three-syllable) words. Read at rate of 95–120 words per minute. Compare similarities and differences between words and between series of numbers.

Writing:

Print simple sentences containing subject, verb, and object, and series of numbers, names and addresses.

Speaking:

Speaking simple sentences, using normal word order, and present and past tenses.

LEVEL 2:

Reading:

Passive vocabulary of 5,000–6,000 words. Read at a rate of 190–215 words per minute. Read adventure stories and comic books, looking up unfamiliar works in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.

Writing:

Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs.

Speaking:

Speak clearly and distinctly and appropriate pauses and emphasis, correct pro-

nunciations, variations in word order, using present, perfect, and future tenses. *Id.* at 5–6.

■ The *DOT* is not the only source of acceptable information on the characteristics and requirements of the various jobs in the national economy. *See* 20 C.F.R. § 404.1566; *Barker v. Shalala,* 40 F.3d 789, 795 (6th Cir.1994) (noting that "[i]t would be manifestly inappropriate to make the *Dictionary of Occupational Titles* the sole source of evidence concerning gainful employment"). The ALJ may rely on a vocational expert found to be credible even if the witness' conclusions are contrary to the *DOT. Ibid.* Moreover, "consulting vocational experts are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's classifications." *Wright v. Massanari,* 321 F.3d 611, 616 (6th Cir.2003). However, in this case the vocational expert did not quarrel with the job descriptions in the *DOT* and in fact relied on them during his testimony to the extent that he actually cited the job index numbers. He also expressed doubt about the plaintiff's ability to perform those jobs given the deficiency in pace disclosed by the vocational evaluation.

If the ALJ would have perceived a conflict between the vocational expert's opinion and the job requirements for reasoning and reading listed in the *DOT,* then the ALJ was obliged to elicit information to resolve the conflict. SSR 00–4p states that "[o]ccupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the *DOT.* When there is an apparent unresolved conflict between VE or VS evidence and the *DOT,* the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." The record, however, discloses no attempt to comply with SSR 00–4p.

■ Viewing the record as a whole results in the conclusion that the ALJ did not resolve inconsistencies in the evidence or properly evaluate the extend of the plaintiff's residual functional capacity. The Court finds, therefore, that the ALJ's determination that the plaintiff can perform a significant number of jobs in the economy is not supported by substantial evidence.

■ That leaves the question whether further fact-finding is required, for "[i]f a court determines that substantial evidence does not support the Secretary's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir.1994). In *Faucher,* the district court found that the Commissioner's decision was not supported by substantial evidence because the hypothetical question posed by the ALJ to a vocational expert did not incorporate all of the claimant's impairments. The district court also concluded that it was unable to remand for taking new and additional evidence because of the limitation contained in sentence six of 42 U.S.C. § 405(g), which conditions a remand on a showing of good cause. Rather, the district court remanded for an award of benefits. On appeal, the Court of Appeals agreed that sentence six of Section 405(g) requires the Secretary to establish good cause as a prerequisite to a remand. However, a post-judgment remand for further proceedings is authorized under sentence four of Section 405(g). *See Melkonyan v. Sullivan,* 501 U.S. 89, 97–98, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). Further, where proof

of disability is strong and significant evidence to the contrary is lacking, the Commissioner's decision should be reversed and the Court is empowered to remand for an award of benefits. *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir.1985).

In this case, the Court finds that the record requires further development; additional factual questions require resolution at the administrative level. A remand for further fact finding is required so that the Commissioner can properly apply SSR 00–4p, take appropriate account of the evidence concerning the plaintiff's reported test-verified deficiency in pace, and pose a hypothetical question to a vocational expert that incorporates all of the plaintiff's functional limitations.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation is **REJECTED.**

It is further **ORDERED** that the plaintiff's motion for summary judgment [dkt # 8] is **GRANTED IN PART** and **DENIED IN PART.**

It is further **ORDERED** that the defendant's motion for summary judgment [dkt # 9] is **DENIED.** The findings of the Commissioner are **REVERSED,** and the matter is **REMANDED** to the Social Security Commission for further proceedings.